IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| NEEDBASEDAPPS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CV. NO. SA-12-CV-00527-DAE |
| | ) | |
| ANTHONY "TONY" ROBBINS and | ) | |
| ROBBINS RESEARCH | ) | |
| INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER: (1) DENYING PLAINTIFF'S MOTION TO REMAND; (2)
GRANTING IN PART AND DENYING AS MOOT IN PART DEFENDANT'S
MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER OR, IN THE
FURTHER ALTERNATIVE, STAY PROCEEDINGS PENDING RULINGS IN
<u>FIRST-FILED CASE</u>

On February 15, 2013, the Court heard Defendant's Motion to

Dismiss or, in the Alternative, Transfer or, in the further Alternative, Stay

Proceedings Pending Rulings in First-Filed Case ("Defendant's Motion") and

Plaintiff's Motion to Remand ("Plaintiff's Motion").  Robert L. Chaiken, Esq., and

R. Laurence Macon, Esq., appeared at the hearing on behalf of Needbasedapps,

LLC ("NBA" or "Plaintiff"); Bruce K. Spindler, Esq., and Linda S. McDonald,

Esq., appeared at the hearing on behalf of Robbins Research International, Inc.

("RRI") and Anthony "Tony" Robbins ("Robbins") (collectively, "Defendants").
After reviewing the motions and the supporting and opposing memoranda, the
Court **DENIES** Plaintiff's Motion ("Mot. to Rem.," doc. # 7) and **GRANTS IN
PART** and **DENIES AS MOOT IN PART** Defendant's Motion ("MTD," doc.
# 4).

BACKGROUND

I.      Events Precipitating this Litigation

        NBA is a Texas-based limited liability company.  RRI is a marketing
firm incorporated in Nevada whose primary place of business is in California.
(Doc. # 5 at 1.)  RRI promotes and sells personal coaching services and
motivational products.  (Id.)  Robbins is RRI's Chairman.  (Id.)

        In October or November of 2010, RRI and NBA entered into
discussions about NBA developing iPhone, iPad, Mac Desktop, and web-based
applications for RRI (collectively, "the applications").  (Doc. # 5 App. C ¶ 9; Doc.
# 12 Ex. 11 ¶ 9–11.)  The parties did not execute a written contract.  Nevertheless,
in January or February of 2011, RRI allegedly "loaned" $20,000 to NBA "to offset
certain costs of developing the iPhone application and the iPad application."  (Doc.
# 5 App. C ¶ 10.)  Then, on February 9, 2011, a representative of NBA requested
that RRI and NBA prepare a term sheet regarding the parties' arrangement that

2

NBA could show to potential investors.  (Doc. # 5 App. C ¶ 11.)   In response to this request, RRI and NBA began to negotiate a term sheet, allegedly reaching agreement on a Summary of Terms ("SOT") in May 2011.  (Id. ¶ 12.)

RRI claims that the SOT established, among other things, that (1) "upon RRI's acceptance of an Application, any and all discoveries, inventions, improvements, trade secrets, know-how, works of authorship or other intellectual property . . . incorporated into the application would become . . . the sole and exclusive property of the RRI" (id. ¶ 12(d)(i)); (2) that "all original works of authorship protectable by copyright [were] 'works for hire' owned by RRI" (id. ¶ 12(d)(ii)); (3) that Defendant would facilitate all necessary transfers and licenses of intellectual property to RRI if any third party provided services to develop the applications (id. ¶ 12(d)(iii)); and (4) that the parties would eventually "negotiate and draft a long-form contract" (id. ¶ 12).  However, the parties do not dispute that the SOT was never executed and that no long-form contract was ever signed.  (Id. ¶ 13; Doc. # 12 Ex. 11 ¶ 14.)

Despite the parties' failure to execute the SOT or a long-form contract, NBA began developing the applications and hired Steven Doyle ("Doyle") as a programmer.  (Doc. # 5 App. C ¶ 14; Doc. #12 Ex. 11 ¶ 12.)  Both parties acknowledge that RRI advertised to customers that certain of the

applications would be available for sale at a "Date with Destiny" event on December 17, 2011 and subsequently at a "Business Mastery Seminar" on January 20, 2012. (Doc. # 5 App. C ¶¶ 16–18; Doc. #12 Ex. 11 ¶¶ 14–15.) However, NBA did not deliver the applications by those dates. (Doc. # 5 App. C ¶¶ 17–19; Doc. # 12 Ex. 11 ¶¶ 14–15.) RRI claims that NBA represented that the applications would be completed in time for the events (doc. # 5 App. C ¶¶ 16–17), and that NBA's failure to deliver the applications resulted in RRI being forced to offer attendees at the Business Mastery Seminar alternative compensation amounting to $192,000 (id. ¶ 19).

On January 3, 2012, apparently over a year after he began working on the applications, Doyle signed a letter agreement with NBA. (Doc. # 12 Ex. 11 ¶ 16.) The agreement purported to define all software and other materials developed by Doyle as "works for hire" that belonged to NBA under copyright law. (Doc. # 5 App. C ¶ 21; Doc. #12 Ex. 11 ¶ 16.) The contract also prohibited Doyle from performing any services for RRI for a period of one year after the termination of his contract with NBA. (Doc. # 5 App. C ¶ 26; Doc. #12 Ex. 11 ¶ 16.) RRI alleges that NBA "induced Doyle to enter into the letter agreement based on the false representation that [it] was required by [NBA's] agreement with RRI." (Doc. # 5 App. C ¶ 25.)

According to RRI, on January 22, 2012, NBA's counsel, Michael Paradise ("Paradise"), informed RRI's counsel, Frederick Gartside ("Gartside"), that NBA would not deliver the applications to RRI.  (Doc. # 5 App. C ¶ 29.) Paradise allegedly told Gartside that "RRI would have no choice but to buy-out [NBA]."  (Id.)  RRI further alleges that on January 24, 2012, Paradise demanded that RRI pay $900,000 to buy NBA's rights to the applications.  (Id.)  On January 25, 2012, Doyle and RRI entered into a written contract whereby Doyle assigned his rights and interests in the applications to RRI.  (Doc. # 5 App. C ¶ 31.)

II.    Initiation of the California and Texas Actions

On January 30, 2012, RRI filed a complaint against NBA in the United States District Court for the Central District of California.  See Robbins Research Int'l, Inc. v. NeedBasedApps, LLC, et al., No. 2:12-cv-00797-GW-JEM (C.D. Cal. Jan. 30, 2012) [hereinafter "California action"].  The complaint included claims for breach of contract, intentional and negligent misrepresentation, and declaratory relief.  (MTD at 1.)

On February 20, 2012, NBA filed a lawsuit against RRI and Robbins in Texas state court  ("the first-filed Texas action").  (Doc. # 12 Ex. 11.)  The state court petition included claims for breach of contract, tortious interference with a contract, conspiracy, misappropriation of trade secrets, and declaratory relief.  (Id.)

5

Then, on March 23, 2012, NBA filed in the California action a Motion to Dismiss for Lack of Personal Jurisdiction.  (California action, doc. # 10.)  On the same day, NBA filed a Motion to Dismiss Case or Transfer, arguing that RRI's complaint should be dismissed with prejudice on various grounds, including that it "fail[ed] to join indispensable party Steven Doyle"; or, alternatively, that the case should be transferred, pursuant to 28 U.S.C. § 1404(a), to the Western District of Texas, where Doyle could be joined.  (California action, doc. # 9 at 3.)

RRI removed the first-filed Texas action to this Court on March 30, 2012, asserting that federal jurisdiction is appropriate because NBA's claims require application of federal copyright law.  (MTD at 2.)  Then, on April 5, 2012, RRI filed its First Amended Complaint in the California action, joining Doyle as a party plaintiff.  (California action, doc. # 17.)  In light of the First Amended Complaint, the Honorable George H. Wu, United States District Judge, vacated NBA's motions to dismiss or transfer.  (California action, doc. # 19.)

On April 5, 2012, RRI's litigation counsel, Brian Wolf ("Wolf"), sent a letter to NBA's counsel, Kenneth Chaiken ("Chaiken").  (Doc. # 12 Ex. 3.)  Wolf stated that he had been informed that Antony Berkman ("Berkman"), a member of NBA, claimed to possess audio recordings of certain of his (Berkman's) conversations with Robbins and intended to publicly release the recordings "in

order to gain some concession from [Robbins] or advantage in the pending litigation between NBA and RRI." (Id. at 2.) Wolf observed that it is illegal under California law to record a telephone conversation without the consent of all parties involved, and a party recorded without permission may recover civil damages from the offending party. (Id. at 3 (citing to Cal. Pen. Code §§ 632, 637.2(a)).) Finally, Wolf asserted that, if NBA released secretly recorded conversations or engaged in conduct that otherwise defamed his client, his client would "take immediate and decisive action against [NBA]." (Id. at 5.)

On April 12, 2012, NBA initiated the instant action in Texas state court (the "second-filed Texas action") against RRI and Robbins (collectively, "Defendants"). (Doc. # 12 Ex. 1.) NBA's Original Petition sought a declaratory judgment that NBA could not be held liable under California Penal Code §§ 632 and 637.2(a) for recording conversations between Berkman and Robbins without Robbins' knowledge or consent. (Id. at 5.) Specifically, the Petition sought a declaration that Texas law, which permits the recording of telephone conversations with only one party's consent, applies in any case in which a Texas resident records a telephone call while in Texas. (Id.) In the alternative, the Petition asked for a declaration that, even if California law were applicable, NBA's conduct was not unlawful because the recordings "occurred under circumstances where there

7

was a reasonable expectation that the communications would be recorded."  (Id. at 6.)

On April 30, 2012, NBA again filed in the California action (1) a Motion to Dismiss for Lack of Jurisdiction (California action, doc. # 23) and (2) a Motion to Dismiss Case or Transfer (California action, doc. # 24).  On June 5, 2012, the Honorable Judge Wu denied NBA's motion to dismiss for lack of jurisdiction and granted NBA's motion to dismiss as to RRI's claim for breach of a written contract, granting RRI leave to amend.  (California action, doc. # 31.) Finally, Judge Wu denied NBA's motion to transfer, adding that "[t]he Court perceive[d] zero indications that the choice of forum in this case was as the result of forum shopping."  (California action, doc. # 30 at 4.)

On May 2, 2012, counsel for RRI in the California action sent counsel for NBA a letter to initiate the meet-and-confer process for a proposed motion for leave to file a second amended complaint.  (Doc. # 11 Ex. 5.)  The letter stated that RRI intended to seek leave of court to file a second amended complaint naming Mark Geller ("Geller"), a member of NBA, as a defendant in the California action on the ground that Geller has personal liability based on his personal participation in tortious acts, as well as under the alter ego doctrine.  (Id.)  A proposed second amended complaint was attached to the letter.  (Id.)

On May 3, 2012, Geller filed a Petition in Intervention in the second-filed Texas action.  (Doc. #12 Ex. 4.)  Stating that he was informed by RRI that it intended to hold him personally liable, Geller sought a number of declarations from the court, including: (1) that he is not the alter ego of NBA and has not abused the corporate form; (2) there is not such a unity of interests between Geller and NBA that their separate personalities do not exist; and (3) he is not personally liable for alleged breaches of contract and/or tortious activity by NBA.  (Id. at 3–5.)

On May 25, 2012, RRI's counsel sent a letter to NBA's counsel "urging NBA to voluntarily dismiss its claims in the [second-filed Texas action]." (MTD at 3.)  In the letter, RRI's counsel informed NBA that Berkman had admitted to Robbins in writing that NBA's "entire Texas Complaint . . . is nonsense," "NBA's story is all made up," and NBA has "no trade secrets" relating to the applications.  (Id. at 4.)

On May 29, 2012, NBA filed a First Amended Original Petition ("FAP") in the second-filed Texas action.  ("FAP," Doc. # 12, Ex. 10.)  The FAP incorporated the request for declaratory judgment contained in the original Petition and a request for a declaration regarding NBA's status as Geller's alter ego.  (FAP ¶¶ 13–17.)  The FAP also included three new counts, all related to Berkman's

9

alleged disclosures to Robbins.  (Id. ¶¶ 18–24.)  NBA alleges that RRI tortiously interfered with its business relationship with Berkman (Count 2); engaged in a civil conspiracy, the purpose of which was to cause Berkman to breach his fiduciary duty and duty of loyalty to Plaintiff (Count 3); and assisted, aided, and abetted Berkman in breaching his fiduciary duty and duty of loyalty (Count 4).

Defendants removed the second-filed Texas action to this Court on May 29, 2012.  (Doc. # 1.)  On June 19, 2012, Defendants filed the Motion to Dismiss or, in the Alternative, Transfer or, in the further Alternative, Stay Proceedings Pending Rulings in First-Filed Case ("Defendants' Motion") ("MTD," Doc. # 4) that is now before the Court.  On June 28, 2012, Plaintiff filed the Motion for Remand ("Plaintiff's Motion") that is presently before this Court. ("Mot. to Rem.," Doc. # 7.)

On July 17, 2012, NBA filed in the California action a Motion to Dismiss First, Second, Third, Sixth, and Seventh Causes of Action for Failure to State any Claim (Rule 12(b)(6)); Fourth and Fifth Actions for Lack of Subject Matter Jurisdiction (Rule 12(b)(1)).  (California action, doc. # 42.)  Three days later, RRI moved for leave to file its Third Amended Complaint and to add Geller as a defendant.  (California action, doc. # 44.)  On August 27, 2012, Judge Wu dismissed RRI's first and second causes of action (breach of express contract and

10

breach of implied-in-fact contract), granting leave to amend; denied all of NBA's other motions, including its motion to transfer the action to the Western District of Texas; and denied RRI's motion for leave to add Mark Geller as a defendant. (California action, doc. # 62.)

On September 10, 2012, RRI filed its Third Amended Complaint against NBA and Does 1 through 10, bringing claims for (1) breach of express contract; (2) breach of implied-in-fact contract; (3) quasi-contract; (4) breach of express contract (for the $20,000 loan); (5) intentional misrepresentation; and (6) declaratory relief.  (Doc. # 21 Ex. B.)  On November 5, 2012, Judge Wu denied NBA's motion to dismiss the Third Amended Complaint.  (Id. Ex. C.)  On November 19, 2012, NBA filed its Amended Answer to Plaintiffs' Third Amended Complaint.  (Id. Ex. D).

On January 22, 2013, Judge Wu entered a New Scheduling Order in the California action.  (Id. Ex. A.)  Pursuant to that ruling, mediation between all parties is scheduled to occur on February 26 or 27, 2013, in Las Vegas, Nevada, with Hon. David Hagan.  (Id.)  The Order further provided that mediation must be complete by March 27, 2013; that the discovery cut-off is July 1, 2013; and that the trial is currently set for September 10, 2013.  (Id.)

DISCUSSION

Defendants move the Court to dismiss, transfer or stay this action in light of the first-filed California action.  (MTD.)  Plaintiff moves to remand the case back to state court pursuant to 28 U.S.C. § 1447(c) on the ground that this Court lacks subject matter jurisdiction.  (Mot. to Rem.)  The Court will first address the issue of its jurisdiction.

I.    Subject Matter Jurisdiction

As a preliminary matter, the Court must determine whether it has jurisdiction to hear this case.  See Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999) ("[S]ubject-matter jurisdiction is . . . 'an essential element of the jurisdiction of a district . . . court,' without which the court is 'powerless to proceed to an adjudication.'") (quoting Emp'rs Reinsur. Corp. v. Bryant, 299 U.S. 374, 382 (1937)).  Unless otherwise provided by statute, federal district courts have jurisdiction over: (1) all civil actions arising under the Constitution, laws, or treaties of the United States; and (2) civil actions between citizens of different states, where the matter in controversy exceeds $75,000, exclusive of interests and costs.  See 28 U.S.C. §§ 1331, 1332(a).  The party asserting federal jurisdiction – in this case, Defendants – carries the burden of establishing that it exists. Physician Hosps. of Am. v. Sebelius, 691 F.3d 649, 652 (5th Cir. 2012).

12

Defendants assert that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).  There is no dispute that the parties are diverse.  (See Mot. to Rem. at 7.)  However, Plaintiff argues that federal diversity jurisdiction is improper because the case does not involve an amount in controversy in excess of $75,000. (Mot. to Rem.)

The Fifth Circuit has held that, "[w]here the plaintiff has alleged a sum certain that exceeds the requisite amount in controversy, that amount controls if made in good faith."  Allen v. R & H Oil & Gas Co., 63 F.3d 1326, 1335 (5th Cir. 1995) (citing to St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938)).  When the plaintiff's complaint does not allege a dollar amount of damages, "'the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds' the jurisdictional amount."  Garcia v. Koch Oil Co. of Tex. Inc., 351 F.3d 636, 638–39 (5th Cir. 2003) (quoting De Aguilar v. Boeing Co., 11 F.3d 55, 58 (5th Cir. 1993)).  If it is not "facially apparent" from the plaintiff's complaint that his or her claims likely exceed $75,000, Allen, 63 F.3d at 1335, the defendant may "set forth 'summary judgment type evidence' of facts in controversy that support a finding of the requisite amount."  Manguno v. Prudential Prop. & Cas. Insur. Co., 276 F.3d 720, 723 (5th Cir. 2002).

13

In this case, the FAP does not allege a dollar amount of damages.  The Court must therefore determine whether Defendant has shown by a preponderance of the evidence that the claims alleged in the FAP exceed $75,000.

    A.    <u>Count One: Request for Declaratory Judgment</u>

In an action for declaratory relief, the amount in controversy is "the value of the right to be protected or the extent of injury to be prevented."  <u>St. Paul Reinsur. Co., Ltd. v. Greenberg</u>, 134 F.3d 1250, 1252–53 (5th Cir. 1998).  Thus, "[i]f a plaintiff seeks a declaration regarding liability, the potential liability is the amount in controversy."  <u>Rangel v. Leviton Mfg. Co., Inc.</u>, No. EP-12-CV-04-KC, 2012 WL 884909, *6 (W.D. Tex. Mar. 14, 2012); <u>see also</u> <u>Dow Agrosciences LLC v. Bates</u>, 332 F.3d 323 (5th Cir. 2003), vacated on other grounds by <u>Bates v. Dow Agrosciences LLC</u>, 544 U.S. 431 (2005) (where plaintiff sought a declaratory judgment that it was not liable to farmers threatening to sue, amount in controversy was damages claimed in demand letters).

    1.    <u>Declaration Regarding Legality of Audio Recordings</u>

NBA seeks a declaration that California Penal Code §§ 632 and 637.2 do not apply to Texas residents who record telephone conversations in Texas without the consent of all parties to the conversation.  (FAP ¶ 14.)  NBA asserts that it "is not seeking to avoid liability under the California statute," but rather "is

14

seeking a declaration that the conduct in question was expressly lawful under Texas law such that California's statute cannot reach into Texas to render it unlawful or actionable." (Doc. # 13 at 2.) This argument is clearly without merit. The FAP expressly states: "The uncertainty and insecurity of the parties regarding the current and future status of their relationship, and their <u>liability</u> and obligations to one another, requires declarations of this Court." (FAP ¶ 13 (emphasis added).) Indeed, the Court can conceive of no reason why NBA would seek a declaration that its conduct was lawful other than to determine its potential liability, and NBA offers none.

However, NBA is correct to conclude that Defendants have failed to show that the extent of potential liability exceeds $75,000. (<u>See</u> Doc. # 13 at 3.) Defendants point out that California Penal Code § 637.2 authorizes a party who has been recorded without his consent to bring a lawsuit for the greater of $5,000 per violation or three times the amount of actual damages, if any, sustained by the injured party. (Doc. # 11 at 3 (citing to Cal. Penal Code § 632(a).) Defendants claim that there were at least fifteen conversations between Defendant Robbins and NBA—the minimum number of recordings required to bring the amount in controversy to $75,000. (Doc. # 11 at 3.) This evidence is simply too speculative

for the Court to conclude that the value of the declaration sought in this instance exceeds $75,000.

2.      Declaration Regarding Geller's Status as NBA's Alter Ego

NBA also seeks a declaratory judgment that NBA is not Geller's alter ego.  (Id. ¶ 15.)  Again, NBA claims that the declaratory relief sought is not a declaration regarding liability.  (Doc. # 13 at 4 ("[T]he declaratory relief sought . . . by Dr. Geller . . . does not relate to any other claims in any other cases; rather, it relates to the possibility of [Geller] being an alter ego, under Texas statute and law."[1]).)  In other words, NBA asks the Court to believe that Geller's intervention in this lawsuit and the declaratory judgment sought are wholly unrelated to the California action and RRI's announcement in that case that it intended to seek leave of court to file a second amended complaint naming Geller a defendant based in part on an alter ego theory (doc. # 5 App. J).  NBA offers no explanation as to

---

[1] The Court notes that NBA relies heavily on the fact that "Geller's status as NBA's alter ego does not relate to any other claims in any other cases."  (Doc. # 13 at 4.)  NBA goes so far as to point out that "despite threatening [to join Geller in the California action] on or about May 28, 2012, RRI has never carried out the threat. . . ."  (Id.)  The disingenuousness of this argument is not lost on the Court.  NBA surely recalls that Geller intervened in this action one day after RRI notified NBA that it intended to join Geller in the California action, and that Judge Wu subsequently denied RRI leave to add Geller as a defendant in that case precisely because his claim for declaratory judgment was pending before this Court.  (See Doc. # 16 Ex. A at 12–13.)

why Geller would seek such a declaration absent the threat of liability in the California action.  Furthermore, the FAP itself states: "[T]here exists a genuine and bona fide dispute, controversy and disagreement between NBA and the Defendants arising in connection with rights, duties and obligations vis-à-vis each other with regard to whether or not [NBA] is an alter ego of its member Mark E. Geller." (FAP ¶ 15.)  The declaratory relief sought plainly relates to Geller's potential liability for NBA's conduct.  Thus, the amount in controversy is the amount of liability Geller may be exposed to.

        The extent of Geller's potential liability can be gleaned from the second amended complaint RRI proposed to file in the California action.  RRI's May 2, 2012 letter to NBA announcing its intention to name Geller as a defendant included a copy of the second amended complaint RRI proposed to file.  (Doc. # 11 Ex. 5.)  The proposed second amended complaint alleges that NBA is the alter ego of Geller and that Geller is personally liable for the acts of NBA alleged therein.  (Id. ¶¶ 10–12.)  RRI seeks to recover general damages; special damages, including lost profits; prejudgment interest; attorneys' fees and costs; and punitive damages.  (Id. at 19 ¶¶ 1–6.)  Although the proposed second amended complaint does not quantify the total amount of damages sought, RRI claims to have incurred costs of $192,000 as a result of NBA's failure to deliver the applications in time for

the Business Mastery Seminar on January 20, 2012.  (Id. ¶ 23.)  RRI also seeks to recover $20,000 loaned to NBA to develop the applications.  (Id. ¶¶ 47–50.)  The value of declaratory relief exempting Geller from personal liability for NBA's actions as its alter ego is thus at least $212,000—well over the $75,000 required to invoke federal diversity jurisdiction.

Plaintiff's reliance on Rangel v. Leviton Mfg. Co., No. EP-12-CV-04-KC, 2012 WL 884909 (W.D. Tex. Mar. 14, 2012) (see Mot. for Rem. at 12–13) is misplaced.  In Rangel, the plaintiffs were former employees of the defendant.  The defendant had previously sued the plaintiffs, alleging that the plaintiffs had created fraudulent expense reports, converted the defendant's inventory, and misappropriated corporate assets (the "2010 Lawsuit").  The 2010 Lawsuit was dismissed without prejudice.  2012 WL 884909, at *1.  The plaintiffs subsequently brought suit against the defendant, seeking, among other things, a declaration that the 2010 Lawsuit was "groundless, frivolous, and brought in bad faith and that Plaintiffs suffered damages as a result of Defendant's conduct."  Id. at *2.  The defendant argued that the plaintiffs sought, in essence, a declaration that they did not commit conversion, fraud, or misappropriation, and therefore the proper value of the declaration was the extent of the plaintiffs' potential liability in the 2010 Lawsuit.  Id. at *7.  The court concluded that it could not quantify the extent of the

plaintiffs' potential liability in the 2010 Lawsuit, because that action gave no

indication of the value of the defendants' claims for fraud, misappropriation, and

conversion.  Id.  By contrast, here, the value of RRI's claims in the California

action and thus the extent of Geller's potential liability is quantifiable.

    3.   <u>Attorney's Fees</u>

    "If a state statute provides for attorney's fees, such fees are included as

part of the amount in controversy."  <u>Manguno</u>, 276 F.3d at 723 (quoting <u>Foret v. S.

Farm Bureau Life Ins. Co.</u>, 918 F.2d 534, 537 (5th Cir. 1990)).  In this case, NBA

seeks costs and attorney's fees under § 37.009 of the Texas Civil Practice and

Remedies Code.  (FAP ¶ 17.)  Section 37.009 authorizes a trial court to award costs

and attorney's fees to either side in a declaratory judgment action.  Tex. Civ. Prac.

& Rem. Code § 37.009; <u>see also</u> <u>Arthur M. Deck & Assocs. v. Crispin</u>, 888 S.W.2d

56, 62 (Tex. App. 1994).

    The parties have filed competing statements with respect to the

amount of attorney's fees this case will likely generate.[2]  However, because the

---

[2]  Geller's declaration for the Plaintiff states, among other things, that the
attorney's fees incurred as a result of litigating this suit will not exceed $75,000.
("Geller Decl.," Mot. to Rem. Ex. M ¶ 9.)  Bruce K. Spindler ("Spindler"), one of
RRI's attorneys, submitted an affidavit stating that his firm's fees were already in
excess of $45,000 and in his opinion would greatly exceed $75,000 by trial.  (Doc.
# 11 Ex. 10.)  Spindler also declared that, in light of his previous experience with
NBA's counsel and their "no-holds-barred" litigation style, he expected NBA's
attorney's fees to be well above $75,000 as well.  (<u>Id.</u>)

Court has already concluded that the value of the declaratory judgment NBA seeks regarding its status as Geller's alter ego exceeds $75,000, the Court need not decide whether attorney's fees will more likely than not exceed the jurisdictional amount.

B.   <u>Counts Two, Three, and Four: Tortious Interference, Civil Conspiracy, and Aiding, Abetting and Assisting Breach of Fiduciary Duty</u>

Counts Two, Three and Four of the FAP allege claims for tortious interference, civil conspiracy, and aiding and abetting a breach of fiduciary duty. Plaintiff seeks general, consequential, special, and punitive damages incurred as a result of Defendants' conduct.

The FAP is devoid of facts that would help the Court value these claims.  The only reference in the FAP to the facts underlying these three counts is a paragraph that states: "On information and belief, the Defendants have interfered with the relationship between NBA and one of its members–Antony Berkman–and have wrongfully, indeed tortiously induced or caused him to breach his fiduciary duty to NBA, and/or his duty of loyalty to NBA."  (FAP ¶ 12.)  Plaintiff maintains that the only damages arising from Counts Two, Three and Four "involve NBA's expenditure of attorney's fees to respond to [Defendants'] contentions regarding

the significance and effect of Berkman's delivery of information to Defendants."
(Geller Decl. ¶ 8.)  Defendants offer a different reading of Counts Two, Three and
Four, arguing that they are in effect claims for misappropriation of trade secrets,
and thus have a value of $900,000 – the amount NBA allegedly demanded RRI pay
to buy NBA's rights to the applications.  (Doc. # 11 at 7.)

   In reply, Plaintiff objects to Defendants' characterization of Counts
Two, Three and Four as claims for misappropriation of trade secrets, arguing that
"facially and actually, none of these [Counts] involve relief related to a
misappropriation of trade secrets."  (Doc. # 13 at 5.)  This argument is belied by
the language of Count Three, which states: "The Defendants had a specific meeting
of the minds on the object or course of action of the conspiracy and at least one
member of the conspiracy committed an unlawful, overt act to further the object or
course of action (i.e., misappropriating trade secrets, etc.)."  (FAP ¶ 20 (emphasis
added).)  Nevertheless, the Court concludes that it does not have sufficient facts to
quantify the value of these claims.

  C. Geller Declaration

   Finally, the Court rejects Plaintiff's argument that the Declaration of
Mark Geller ("Geller Declaration") filed in support of Plaintiff's Motion
establishes that the amount in controversy is less than $75,000.  (See "Geller

Decl.," Doc. # 13 at 7.)  The Fifth Circuit has held that, once a defendant has

established by a preponderance of the evidence that the amount in controversy

exceeds $75,000, the plaintiff may still defeat federal jurisdiction by proving "to a

legal certainty" that the claim is in fact for less than the jurisdictional amount.  De

Aguilar, 47 F.3d at 1412.  This burden might be met in any number of ways, for

example by citing in the complaint to a state law that prohibits recovery of

damages that exceed those requested, or by filing with the complaint a binding

stipulation or affidavit limiting recovery to less than the jurisdictional amount.  Id.

However, because "jurisdictional facts that support removal must be judged at the

time of the removal," Gebbia v. Wal-Mart Stores, Inc., 233 F.3d 880, 883 (5th Cir.

2000),  "once a defendant has removed the case . . . later filings [are] irrelevant."

De Aguilar, 47 F.3d at 1412 (quoting In re Shell Oil Co., 970 F.2d 335, 356 (7th

Cir. 1992)).  The only exception to this general rule is when "the basis for

jurisdiction is ambiguous at the time of removal."  Gebbia, 233 F.3d at 883.

Where that is the case, "post-removal affidavits may be considered in determining

the amount in controversy at the time of removal."  Id.; see also Asociacion

Nacional de Pescadores a Pequena Escala O Artesanales de Colombia (ANPAC) et

al. v. Dow Quimica de Colombia S.A., 988 F.2d 559, 565 (5th Cir. 1993)

[hereinafter "Dow Quimica"] abrogated on other grounds by Marathon Oil Co. v.

Ruhrgas, 145 F.3d 211 (5th Cir. 1998) (holding that post-removal affidavit stating that damages did not exceed jurisdictional amount was properly considered because from the face of the complaint the court could not say that the claims were "necessarily outside of the range that could confer federal jurisdiction").

Here, the basis for jurisdiction was not ambiguous at the time of removal, so post-removal affidavits elaborating upon the value of Plaintiff's claims are neither useful nor appropriate for the Court to consider.  Cf. Dow Quimica, 988 F.2d at 211 (amount in controversy was ambiguous where complaint alleged that plaintiffs developed "skin rashes" but gave no indication of the severity or other information that would help the court determine the amount of potential damages). Moreover, even if the Court were to consider the Geller Declaration, the value of the claims asserted by Plaintiff is not susceptible to limitation by stipulation or affidavit.  The Plaintiff cannot, after all, change the amount of its potential liability in the California action by stipulating to that effect.

For the foregoing reasons, the Court finds that Defendant has proved by a preponderance of the evidence that the amount in controversy exceeds $75,000.  Accordingly, the Court **DENIES** Plaintiff's Motion for Remand (doc. # 7.)

II.     Motion to Dismiss, Transfer, or Stay

Defendants ask the Court to dismiss or transfer this case to the United States District Court for the Central District of California ("the California court") pursuant to the first-to-file rule; or, alternatively, to dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a) due to improper venue based on a binding forum-selection clause in the parties' agreement; or, alternatively, to transfer to the California court pursuant to 28 U.S.C. § 1404(a); or, alternatively, to stay the proceedings until the conclusion of the California action. (MTD.)  The Court concludes that transfer pursuant to the first-to-file rule is proper, and therefore declines to address the other asserted grounds for dismissal, transfer, or stay.

A.     The First-to-File Rule

"The federal courts long have recognized that the principle of comity requires federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs."  W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24, S. Atl. & Gulf Coast Dist. of ILA, AFL-CIO, 751 F.2d 721, 728 (5th Cir. 1985) (citing Kerotest Mfg. Co. v. C-O-Two Fire

24

Equip. Co., 342 U.S. 180 (1952)).  "As between federal district courts, . . . the

general principle is to avoid duplicative litigation."  Colo. River Water

Conservation Dist. v. United States, 424 U.S. 800, 817 (1976).  "The concern

manifestly is to avoid the waste of duplication, to avoid rulings which may trench

upon the authority of sister courts, and to avoid piecemeal resolution of issues that

call for a uniform result."  W. Gulf Mar. Ass'n, 751 F.2d at 729.

       Toward this end, the Fifth Circuit adheres to the "first-to-file rule,"

which states that "when related cases are pending before two federal courts, the

court in which the case was last filed may refuse to hear it if the issues raised by

the cases substantially overlap."  Cadle Co. v. Whataburger of Alice, Inc., 174 F.3d

599, 603 (5th Cir. 1999).  This rule "maximize[s] judicial economy and

minimize[s] embarrassing inconsistencies" by permitting a district court to

"prophylactically refus[e] to hear a case raising issues that might substantially

duplicate those raised by a case pending in another court."  Id. at 604.

       The first-to-file rule not only determines which court may decide the

merits of substantially similar issues but also establishes which court may decide

whether the second suit filed must be dismissed, stayed, or transferred and

consolidated.  Under Fifth Circuit precedent, "the court in which an action is first

filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." Save Power Ltd. v. Syntek Fin. Corp., 121 F.3d 947, 950 (5th Cir. 1997).  In other words, "[i]n the absence of compelling circumstances the court initially seized of a controversy should be the one to decide whether it will try the case." Mann Mfg., Inc. v. Hortex, Inc., 439 F.2d 403, 407 (5th Cir. 1971).

Thus, the "crucial inquiry" for the court in which the later case was filed is whether there is "substantial overlap" between the two actions. Save Power, 121 F.3d at 950.  The rule does not require that the claims or even the parties be identical.  See Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp., 665 F.3d 671, 678 (5th Cir. 2011) ("The rule does not require the cases to be identical."); W. Gulf. Mar. Ass'n, 751 F.2d at 731 n. 5 (noting that incomplete identity of the parties does not require the simultaneous litigation of two essentially identical actions where the parties could obtain complete relief in one forum and any missing parties could probably be joined in that action).  Instead, if the two actions are likely to "overlap on the substantive issues," they should be consolidated in "the jurisdiction first seized of the issues." Mann Mfg., 439 F.2d at 408 n. 6; see also id. (holding that "[o]nce the likelihood of substantial overlap between the two

26

suits had been demonstrated, it was no longer up to the [court in the second-filed case] to resolve the question of whether both should be allowed to proceed"; that authority belonged to the court in the first-filed case) (emphasis added); Cadle, 174 F.3d at 606 ("[O]nce the district court found that the issues might substantially overlap, the proper course of action was for the court to transfer the case to the [first-filed] court to determine which case should, in the interests of sound judicial administration and judicial economy, proceed.") (emphasis added).

There is no dispute that the case before this Court, filed on April 12, 2012, was filed subsequent to the California action, filed on January 30, 2012. Thus, the "crucial inquiry" for this Court is whether there is a "likelihood of substantial overlap" between the two actions. Save Power, 121 F.3d at 950. The Court concludes that there is indeed a likelihood of substantial overlap between this case and the California action. Both cases involve NBA and RRI. Both cases arise from the same alleged agreement between NBA and RRI regarding the development of applications, and from their dealings during the course of their business relationship. It is true, as Plaintiff argues, that this case involves issues and claims not explicitly raised in the California action. However, the issues and claims raised in this case are ancillary to the issues raised in the California action, a

27

fact acknowledged even by Plaintiff (see doc. # 12 at 1 ("This case . . . involves several ancillary disputes between the parties that have arisen after initial litigation was commenced here, and in California.")).  Moreover, if the case were to proceed in this Court, the Court would be compelled to address issues identical to those at stake in the California action.

For example, as Judge Wu pointed out in his August 27, 2012 Order, RRI's claims against Geller are "very likely compulsory counterclaims" to NBA's claim for declaratory relief regarding Geller's status as NBA's alter ego.  (See California action, doc. # 62 (citing to William W. Schwarzer, A. Wallace Tashima & James M. Wagstaff, Cal. Prac. Guide: Fed. Civ. Proc. Before Trial (The Rutter Group 2011).)  Thus, if this Court retained jurisdiction over the case, RRI would in all likelihood file counterclaims seeking to hold Geller personally liable for NBA's actions, thereby forcing this Court to adjudicate issues identical to those being adjudicated in the California action.

Similarly, Plaintiff's claims alleging tortious interference, civil conspiracy, and aiding, abetting and assisting a breach of fiduciary duty almost certainly implicate issues presently before the California court.  The FAP is so devoid of detail, it is nearly impossible to ascertain what facts and issues form the

28

basis for these claims.  However, as previously noted, the count alleging civil

conspiracy identifies "misappropriation of trade secrets" as an overt act committed

in furtherance of the conspiracy to induce Berkman to breach his fiduciary duty

and/or duty of loyalty to NBA.  (FAP ¶ 20.)  Ownership of intellectual property

and misappropriation of trade secrets is at the heart of the case currently pending in

the Central District of California.  Furthermore, if, as Plaintiff asserts, Defendants

intend to claim that Berkman's alleged disclosures constitute a waiver of privilege

(Geller Decl. ¶ 6, 8), the use of Berkman's disclosures will become an issue in the

California action.

          Finally, Plaintiff's claim for a declaration regarding its liability under

the California Penal Code for recording telephone conversations without both

parties' consent does not involve any substantive issues raised in the California

action.  However, the underlying dispute raises questions regarding the parties'

dealings over the course of their relationship, questions that are best dealt with by

the court adjudicating the parties' related claims.  See W. Gulf Mar. Ass'n, 751

F.2d at 730 ("[T]he court with 'prior jurisdiction over the common subject matter'

should resolve all issues presented in related actions."); Wash. Metro. Area Transit

Auth. v. Ragonese, 617 F.2d 828, 830 (D.C. Cir. 1980) (affirming district court's

dismissal of a second-filed case where the question was "closely related" to those

raised in a Virginia proceeding and could have been raised in the Virginia

proceeding).

Plaintiff argues that transfer of this claim is inappropriate because the

California court will not be compelled to apply Texas's choice of law rule.  (See

Doc. # 12 at 17 ("[Defendants] seek to strip Plaintiff NBA of the policy-induced

protections of Texas law it properly has invoked in this case, for the unstated but

obvious purpose of seeking to avail itself, in California, of a cause of action that

Texas law and Texas courts squarely reject.").)  The Supreme Court has held that

when a diversity case is transferred pursuant to 28 U.S.C. § 1404(a), the transferee

court must apply the law of the state from which the case was transferred.  Van

Dusen v. Barrack, 376 U.S. 612, 639 (1964) ("[I]n cases such as the present, where

the defendants seek transfer, the transferee district court must be obligated to apply

the state law that would have been applied if there had been no change of venue.");

see also Tel-Phonic Servs., Inc. v. TBS Int'l, Inc., 975 F.2d 1134, 1141 (5th Cir.

1992) ("[A] section 1404(a) transfer does not change the law applicable, regardless

of who initiates the transfer.").  The same rule does not necessarily apply when a

case is transferred pursuant to the first-to-file rule.  See Volvo Constr. Equip. N.

Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 600 (4th Cir. 2004) (noting that

the Van Dusen rule does not automatically apply to all transfers, and declining to

decide "how this thorny issue should be resolved").  Thus, in this case, while this

Court would be compelled to apply Texas's choice of law rule, see Lockwood

Corp. v. Black, 669 F.2d 324, 327 (5th Cir. 1982) ("The Erie doctrine requires . . .

that a federal court apply the choice-of-law rules of the jurisdiction in which it

sits."), the California court could decide to apply California's choice of law rule

instead.  Plaintiff appears to be concerned that it will not be able to obtain the relief

it seeks—namely, a declaration that Texas law applies and that Plaintiff therefore

cannot be held liable for surreptitiously recording telephone conversations under

California law—if California's choice of law rule is applied.

Plaintiff's concern may be justified, but this Court is under no

obligation to consider whether a party's strategic maneuvering will be foiled if the

Court determines that transfer pursuant to the first-to-file rule is appropriate.  In

fact, "it is a matter for the district court's sound discretion whether to decide a

declaratory judgment action" at all, Mission Ins. Co. v. Puritan Fashions Corp., 706

F.2d 599, 600 (5th Cir. 1983), and courts may, in their discretion, dismiss

declaratory claims "filed for the purpose of anticipating a trial of the same issues in

a court of coordinate jurisdiction," 909 Corp. v. Vill. of Bolingbrook Police

Pension Fund, 741 F. Supp. 1290, 1292 (S.D. Tex. 1990).  Here, Plaintiff filed this

claim for declaratory relief one week after Plaintiff's counsel was notified that

Defendant would take legal action if Plaintiff released secretly recorded telephone conversations.  (See Doc. # 12 Exs. 1, 3.)  "The Court cannot allow a party to secure a more favorable forum by filing an action for declaratory judgment when it has notice that the other party intends to file suit involving the same issues in a different forum."  909 Corp.,741 F. Supp. at 1292.  This Court will not deny transfer of this case despite the substantial overlap between it and the California action simply because doing so may prevent the automatic application of Texas's choice of law rule.  The California court is more than capable of determining which state's choice of law rule applies and of applying Texas law to legal issues that arise if it determines that such a choice of law is appropriate.

In sum, the claims in this case and the California action are not identical, but "the record shows that the overall content of each suit . . . would likely overlap to a substantial degree."  Mann Mfg., 439 F.2d at 407.  "Where the overlap between two suits is less than complete, the judgment is made case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute."  Save Power Ltd., 121 F.3d at 950 (quoting TPM Holdings, Inc. v. Intra-Gold Indus., Inc., 91 F.3d 1, 4 (1st Cir. 1996)).  Here, the overlap is significant and conflict is almost certain to occur.  Allowing these two cases to proceed in

32

different courts would constitute an inefficient use of the time and resources of the parties and the judicial system.

Having found that there is substantial overlap between this case and the first-filed California action, the Court should transfer this suit to the Central District of California, where, at the discretion of the California court, it can be consolidated into the California action.  See Cadle, 174 F.3d at 606 ("[O]nce the district court found that the issues might substantially overlap, the proper course of action was for the court to transfer the case to the [first-filed] court to determine which case should, in the interests of sound judicial administration and judicial economy, proceed.").

CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Remand (doc. # 7) and **GRANTS IN PART** Defendant's Motion to Dismiss or, in the Alternative, Transfer or, in the further Alternative, Stay Proceedings Pending Rulings in First-Filed Case (doc. # 4) insofar as the Court hold that the first-to-file rule warrants transfer to the United States District Court for the Central District of California.  The Court **DENIES AS MOOT IN PART** Defendant's Motion to the extent it argues alternative bases for dismissal, transfer and stay.

33

This case is hereby ordered transferred to the United States District

Court for the Central District of California.

IT IS SO ORDERED.

DATED: San Antonio, Texas, February 20, 2013.

_____
David Alan Ezra
Senior United States District Judge